**UNITED STATES POSTAL SERVICE, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL—CIO, Defendant.**

**No. Civ. JFM–01–1447.**

United States District Court, D. Maryland.

Jan. 7, 2002.

Allen F. Loucks, Office of the U.S. Attorney, Stephen M. Schenning, U.S. Attorney's Office, Tawana E. Davis, U.S. Attorney's Office G/A, Baltimore, MD, for Plaintiff.

Peter D. DeChiara, Cohen Weiss and Simon LLP, New York City, Richard M. Resnick, Martin J. Crane, Sherman Dunn Cohen Leifer and Yelling PC, Washington, DC, for Defendant.

### MEMORANDUM

MOTZ, District Judge.

Now pending before me are cross-motions for summary judgment by Defendant, National Association of Letter Carriers, AFL—CIO ("NALC") and Plaintiff, United States Postal Service ("USPS"). NALC seeks to enforce an arbitration award while USPS seeks to vacate the same arbitration award. For the reasons that follow, I will grant USPS's motion.

### I.

USPS and NALC are parties to a collective bargaining agreement ("CBA") governing the terms and conditions of employment of city letter carriers. Article I, Section 2 of the CBA excludes Postal Service supervisors and managers from coverage. (CBA, NALC Ex. 1, at 1.) Article 15 of the CBA provides a process for arbitration of grievances. (*Id.* at 65–77.)

In November 1991, a letter carrier in Royal Oak, Michigan shot to death four postal employees. This incident was one of several violent incidents at the time involving postal employees. Following the Royal Oak incident, USPS and several organizations representing various postal employees, including NALC, executed a Joint Statement on Violence and Behavior in the Workplace ("Joint Statement") on February 14, 1992 stating:

> We all grieve for the Royal Oak victims, and we sympathize with their families, as we have grieved and sympathized all too often before in similar horrifying circumstances. But grief and sympathy are not enough. Neither are ritualistic expressions of grave concern or the initiation of investigation, studies, or research projects.

> The United States Postal Service as an institution and all of us who serve that institution must firmly and unequivocally commit to do everything within our power to prevent further incidents of work-related violence.

> · · · · ·

> We openly acknowledge that in some places or units there is an unacceptable level of stress in the workplace; that there is no excuse for and will be no tolerance of violence or any threats of violence by anyone at any level of the Postal Service; and that there is no excuse for and will be no tolerance of harassment, intimidation, threats, or bullying by anyone.

> We also affirm that every employee at every level of the Postal Service should be treated with dignity, respect, and

fairness. The need for the USPS to serve the public efficiently and productively, and the need for all employees to be committed to giving a fair day's work for a fair day's pay, does not justify actions that are abusive or intolerant. *"Making the numbers" is not an excuse for the abuse of anyone.* Those who do not treat others with dignity and respect will not be rewarded or promoted. Those whose unacceptable behavior continues will be removed from their positions.

. . . . .

Our intention is to make the workroom floor a safer, more harmonious, as well as a more productive workplace. We pledge our efforts to these objectives.

(Joint Statement on Violence and Behavior in the Workplace, NALC Ex. 3) (emphasis in original).

In 1996, NALC and USPS were unable to resolve a grievance concerning the alleged harassment by a USPS supervisor. NALC and USPS submitted the grievance to national-level arbitration before Arbitrator Carlton Snow. The issue presented to Snow was: "Does the Joint Statement on Violence and Behavior in the Workplace constitute an enforceable agreement between the parties so that the Union may use the negotiated grievance procedure to resolve disputes rising under the Joint Statement? If so, what is an appropriate remedy?" (Snow Arbitration Award, NALC Ex. A, at 2.) NALC argued to Snow that the Joint Statement constituted a contract that was binding upon USPS management and altered the parties' contractual obligations to each other to the extent the Joint Statement was inconsistent with the CBA. USPS argued to Snow that the Joint Statement was not a contract, but instead, an effort to send a message to stop the violence. (Snow Arbitration Award, NALC Ex. A. at 15.)

Arbitrator Snow ruled in favor of NALC and found that "[t]he language of the Joint Statement itself as well as the objective conduct of the parties evidenced their mutual assent to be legally bound by the Joint Statement." (*Id.* at 18.) Snow further found that NALC may use the negotiated grievance procedure under Article 15 of the CBA to resolve disputes under the Joint Statement. (*Id.* at 20.) Snow concluded that when the procedure results in arbitration, arbitrators have flexibility in formulating remedies, "including removing a supervisor from his administrative duties." (*Id.* at 22.) Since the Snow Arbitration Award, numerous regional arbitrators have held that under the Joint Statement, they have the authority to require the USPS to take adverse action against supervisors or managers who engage in conduct that violates the Joint Statement.

This suit concerns a regional arbitration award under which the arbitrator required the USPS to discharge a supervisor. On August 18, 2000 and February 15, 2001, Arbitrator Raymond Britton (the "Arbitrator") held a grievance hearing where USPS and NALC participated. The hearing addressed an incident involving Derrick Hatten, the Postmaster of the Clinton, Maryland post office and Alton Branson, a letter carrier who worked at the Clinton post office. Arbitrator Britton found that on February 27, 1998, Hatten saw Branson sitting in his parked postal vehicle, with the engine running, eating lunch. Hatten approached the vehicle and told Branson to turn off the engine. An argument ensued and Hatten reached into the vehicle for the keys, resulting in physical contact with Branson. Hatten stated that he reached into the vehicle to prevent it from rolling away and causing an accident: Shortly after the incident, Branson was

treated for a bruise on his right arm that he testified occurred when Hatten grabbed his arm.

After considering the grievance, Arbitrator Britton awarded relief in favor of NALC. (the "Britton Award"). Arbitrator Britton found the testimony of Hatten "disingenuous" and that "the Postmaster [Hatten] engaged in a course of conduct that involved an offensive touching of the Grievant [Branson]." (Britton Award, NALC Ex. 7, at 11.) Arbitrator Britton further found that Hatten's conduct was in violation of the Joint Statement and ordered that Hatten be removed from employment with USPS. (*Id.* at 1, 12.)[1]

USPS argues that the Britton Award should be vacated on three grounds: (1) the award exceeded the authority conferred to an arbitrator under the CBA; (2) the award deprives Hatten of due process in violation of the Fifth Amendment; and (3) the award deprives Hatten of his statutory right to appeal to the Merit System Protection Board ("MSPB").

## II.

### A.

■ On September 28, 2001, the United State District Court for the Western District of Tennessee granted summary judgment to NALC and denied summary judgment to USPS in a case involving dispute of an arbitration award based on the Joint Statement. *See United States Postal Service v. National Association of Letter Carriers,* No. 00–2651–GV (W.D.Tenn.2001) (NALC Rep.Ex. A) (hereinafter "the Tennessee case"). The Tennessee case addressed an arbitration award in which the arbitrator ordered that a supervisor be demoted from his managerial position and

not be rewarded or promoted for a period of five years because the supervisor violated the Joint Statement. *Id.* at 3. USPS made the same arguments that it makes here in arguing that the arbitration award be vacated: (1) the award exceeded the authority conferred to an arbitrator under the CBA; (2) the award deprives the supervisor of due process in violation of the Fifth Amendment; and (3) the award deprives the supervisor of his statutory right to appeal to the Merit System Protection Board ("MSPB"). *Id.* at 6. The Tennessee court rejected each of these arguments and ruled in favor of NALC.

■ NALC argues that the Tennessee decision precludes this Court from deciding the issues in this case under the doctrine of collateral estoppel. For collateral estoppel to apply, NALC must establish that:

(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998); *see also Nestorio v. Assocs. Commercial Corp.,* 250 B.R. 50, 55 (D.Md.2000). In this case, the first element is not satisfied. The issue of whether the award exceeded the authority conferred to an arbitrator under the CBA is not identical in both cases because, as will be discussed below, the employment

---

**1.** Arbitrator Britton does not explain in his award why the Joint Statement is applicable to the grievance or how the Joint Statement

gives him authority to order the removal of Hatten.

action taken by the arbitrator is different in the two cases. In the Tennessee case, the arbitrator ordered that the supervisor be demoted from his managerial position and not be rewarded or promoted for a period of five years. In this case, Arbitrator Britton ordered that Hatten be discharged from employment with USPS. Thus, collateral estoppel does not apply to USPS's first argument and the merits of that argument must be determined.[2]

### B.

 USPS's first argument is that the Arbitrator exceeded the authority conferred upon him under the CBA when he ordered that Hatten be removed from employment with USPS. It is well settled that an arbitrator acting within the scope of a collective bargaining agreement receives great deference as to procedural matters and legal construction. *See Int'l Union, United Mine Workers of America v. Marrowbone Dev. Co.*, 232 F.3d 383, 388 (4th Cir.2000); *see also United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."). "If, however, an award fails to 'draw[ ] its essence from the collective bargaining agreement,' deference is not appropriate." *Marrowbone*, 232 F.3d at 388 (*quoting United Paperworkers Int'l*

*Union v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)); *see also Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358 ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."). Three factors are considered in determining whether an arbitration award draws its essence from the collective bargaining agreement: "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." *Mountaineer Gas Co. v. Oil, Chemical, & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir.1996).

The parties focus their arguments on whether the Joint Statement constituted an enforceable contract that amended the CBA. Even assuming that this is true, the Britton Award does not draw its essence from the CBA. The CBA states that "[t]hose who do not treat others with dignity and respect will not be rewarded or promoted. Those whose unacceptable behavior continues will be removed from their positions." (Joint Statement on Violence and Behavior in the Workplace, NALC Ex. 3.) There is no evidence and no finding by the Arbitrator that Hatten engaged in a continuing course of unacceptable conduct. The Arbitrator simply found that Hatten engaged in an offensive touching on this one occasion. (Britton Award, NALC Ex. 7, at 11.)[3] Accordingly, the

---

**2.** Since this argument is dispositive, it is unnecessary to address USPS's additional arguments that the award deprives Hatten of due process in violation of the Fifth Amendment and that the award deprives Hatten of his statutory right to appeal to the Merit System Protection Board. It is likewise unnecessary to address whether collateral estoppel applies to these additional arguments.

**3.** In fact, the Arbitrator did not fully credit the testimony of Branson. The Arbitrator stated that "it is the burden of [NALC] to establish that the Postmaster grabbed the forearm of the Grievant with both hands in such a manner as to a cause a bruising of the right forearm of the Grievant. Here, in the judgment of the Arbitrator, the evidence does

Arbitrator was limited to ordering USPS to not reward or promote Hatten.[4] The Joint Statement expressly states that only those whose behavior "continues" to violate the Joint Statement may be terminated. Repeated violations of the Joint Statement are required to justify an order of termination. In ordering that Hatten be terminated from USPS, the Arbitrator ignored the plain language of the CBA and dispensed "his own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358; *see also Marrowbone*, 232 F.3d at 389 (stating that the arbitrator acted well beyond the "proscribed limits" of the CBA when he ignored plain language in the agreement).[5] Accordingly the Britton arbitration award ordering the USPS to remove Hatten from employment at USPS will be vacated.

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. Defendant's motion for summary judgment is **Denied;**

2. Plaintiff's cross-motion for summary judgment is **Granted;**

3. The arbitration award granted in *United States Postal Service v. National Association of Letter Carriers, AFL—CIO,*

Case No. K94N–4K–C 98111598 (2001) (Britton, Arb.) is **Vacated;** and

4. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

---

not justify such a finding." (Britton Award, NALC Ex. 7, at 10.)

4. The Arbitrator also states that Hatten violated the USPS–NALC Joint Statement of Expectations and the USPS Standards of Conduct, § 666.2, Behavior and Personal Habits, and Handbook M–39, §§ 115.3–115.4. (Britton Award, NALC Ex. 7, at 12.) However, there is no evidence that violation of these other policies justified termination as a remedy for a single offense.

5. NALC cites several cases in other jurisdictions that stand for the proposition that "so long as the award draws its essence from the contract, an arbitrator may order any remedy not expressly prohibited by the parties." (NALC Mem. in Support, at 14.) In fact, assuming the Joint Statement is part of the CBA, the Joint Statement makes clear the parties' intention to only allow termination where there are continuing violations and thus, expressly prohibits termination based on a single incident.